Filed: 2/9/2023 7:01 PM
Michael Gould
District Clerk
Collin County, Texas
By Rachel Bail Deputy
Envelope ID: 72631970

CAUSE NO. 429-00627-2023

| | |
|---|---|
| MICHAEL IRVIN, *Plaintiff* vs. Marriott INTERNATIONAL, INC., *and* Jane Doe, *Defendants*. | IN THE ____ JUDICIAL DISTRICT COURT COLLIN COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Michael Irvin ("Irvin") and files this his Original Petition against Marriott International, Inc. ("Marriott"), and Jane Doe, in support thereof would respectfully show the Court as follows:

### I.
### INTRODUCTION

1.01    Actions have consequences. Rash and thoughtless actions can have severe consequences. Marriott apparently did not appreciate these simple truths when, in a rush to Judgment, its employees and management inaccurately and inflammatorily accused Mr. Irvin of misconduct to the National Football League ("NFL").

1.02    While staying at the Marriott's Renaissance Phoenix Hotel & Spa in Arizona for his duties covering the Super Bowl LVII for the NFL Network, Mr. Irvin had a brief, friendly interaction with a Marriott employee lasting no longer than one minute. Witnesses have verified that Mr. Irvin, casually exchanged pleasantries with one of the hotel employees, Mr. Irvin shook her hand, and went to his room alone.

1.03    Mr. Irvin appreciates spending time with his fans, taking pictures, and speaking with them whenever he can find the time. At all times, Mr. Irvin acts gracious and courteous during

interactions with fans. The Marriott employee was no different and witness testimony will prove this to be the case. Nonetheless, Marriott recklessly reported to the NFL that Mr. Irvin had somehow acted inappropriately even though in this brief interaction with multiple witnesses, nothing took place other than a friendly interaction that ended with a polite handshake.

1.04   What came after has devastated Mr. Irvin personally and professionally as he was pulled from Super Bowl coverage and multiple media outlets reporting that it was due to "misconduct" involving a female hotel employee. Even after being offered multiple witnesses to confirm the propriety of Plaintiff's behavior at all times, Marriott refuses to address and cure the situation just as they refused to investigate the matter before reporting it to the NFL. The Marriott has decided that allowing Mr. Irvin's relationship with the League and its network to continue to deteriorate is worth the cost of not having to admit its own mistake. Mr. Irvin looks forward to introducing facts that will clear his name in Court and hopes the court of public opinion will see the truth from the facts in this case.

## I.
## DISCOVERY CONTROL PLAN

1.01   Plaintiff intends that discovery in this matter should be conducted under Level 3 of Texas Rule of Civil Procedure 190.

1.02   Plaintiff seeks monetary relief in excess of $100,000,000.00.

## II.
## PARTIES

2.01   Plaintiff Irvin is an individual residing in Collin County, Texas.

2.02   Defendant Marriott International, Inc. is a foreign corporation incorporated in the state of Delaware, with its Principal Place of Business in Bethesda, MD, it is registered with the Texas Secretary of State to do business in the State of Texas, and may be served with process by

serving C T Corporation system, 1999 Bryan St., Ste. 900, Dallas, TX 75201. "Renaissance" is a wholly owned subsidiary of Marriott International, Inc.

## III.
## JURISDICTION & VENUE

3.01   This Court has jurisdiction over this lawsuit because the amount in controversy exceeds this Court's jurisdictional requirements.

3.02   Venue is proper in Collin County, Texas because Marriott has availed itself of the laws and jurisdiction of Collin County by operating its businesses within the confines of the county, and because Plaintiff resides in Collin County, Texas.

## IV.
## FACTS

4.01   In February 2023, Plaintiff Irvin traveled to Phoenix to work as a sports commentator for the Super Bowl, and ESPN. He was scheduled to appear on several popular sports commentary shows and appearances in the days leading up to the Super Bowl, and he was going to comment live during the Super Bowl game itself.

4.02   During Plaintiff's stay in Phoenix, he was told by the National Football League ("NFL") to stay at the local Marriott hotel, a "Renaissance" (the "Hotel"). That Hotel was the designated NFL hotel for the Super Bowl this year.

4.03   On or about the night of February 5th, 2023, when returning to the Hotel that evening, he was met by many fans that wanted to talk to him. He took some time to shake their hands, have brief conversations with them, and take photographs with them. He was described as jovial and gracious and behaved "like you see him on TV."

4.04   After these pleasant interactions with fans as well the hotel employee, Plaintiff went up to his room alone and went to sleep without incident. Having struggled to sleep well for the

past several days due to the recent death of his mother-in-law, Plaintiff was finally able to get some sleep, only to be shockingly woken up by a crew of security, to remove him from the hotel without any explanation or questions. Plaintiff was judged guilty without even knowing the accusations. A few days later, Plaintiff was removed from his scheduled programming, and essentially "kicked off the air" and "cancelled" due to these allegations.

4.05    Over the last 24 hours, several witnesses have come forward to further support that these allegations are false, and they are now the basis of this instant lawsuit.

4.06    Evidently, as Plaintiff was sleeping one of the managers of the Hotel reported false information to the NFL about the Plaintiff accusing him of improper behavior towards a hotel employee. The NFL responded by removing Plaintiff from all scheduled programming surrounding the Super Bowl. Plaintiff's representatives have reached out to the hotel and even met in person to obtain clarity about this situation and provide witnesses and resolve this matter before Plaintiff's reputation could be damaged any further—but to no avail.

4.07    At the time that the Manager contacted the NFL he was aware that Plaintiff had an on-going contractual relationship with the NFL. He contacted the NFL with the intention of damaging that relationship and "cancelling" Plaintiff.

4.08    These false statements have caused over $100,000,000.00 in damages to the Plaintiff's reputation and existing high-profile endorsements, appearances, and other similar contracts. Plaintiff denies the validity of all allegations made against him and prays that this court will vindicate him publicly once and for all, and award compensation for the damages he has already, and will continue to suffer due to Defendant's misrepresentations.

## V.
## CAUSES OF ACTION

*Count One – Defamation*



5.01     Plaintiff incorporates by reference each and every allegation contained in the paragraphs above as if the same were set forth in full herein.

5.04     The Defendant employed a manager that through the scope of his employment, via false statements and unfounded allegations, caused irreparable harm to the Plaintiff's reputation and existing contracts.

5.05     The Defendant's actions constitute defamation under the common law.

5.06     The Defendant made statements that he knew to be false, intended to harm the Plaintiff's reputation, and those statements did in fact harm the Plaintiff's reputation causing damages. Therefore, the Defendant is liable to the Plaintiff for Defamation.

### *Count Two – Tortious Interference with a Business Relationship*

5.07     Plaintiff incorporates each and every allegation contained in the paragraphs above as if the same were set forth herein.

5.08     The Plaintiff had valid contracts. For example, Plaintiff has a contractual relationship with the NFL Network and ESPN in which Plaintiff appears on television and provides commentary during broadcasts of NFL Football games.

5.09     The defendant willfully and intentionally interfered with Plaintiff's contracts. By contacting the NFL with his spurious and false allegations he intended for the NFL to "cancel" Plaintiff by ending his employment and removing Plaintiff from his role as a broadcaster.

5.10     The interference proximately caused Plaintiff's injury. The day following Defendant's contact with the NFL, Plaintiff was removed from the Hotel. Within days Plaintiff was pulled from all Super Bowl related broadcasts. These actions would not have occurred but for Defendant's contacting the NFL with these false claims.

5.11 Plaintiff incurred actual damage or loss. Plaintiff was prevented from participating in any Super Bowl related broadcasts and related activities. As a further humiliation, Plaintiff has also been banned from any of the Defendant's properties.

## VI.
## DAMAGES

### *Actual Damages*

6.01 Plaintiff incorporates by reference each and every allegation contained in the paragraphs above as if the same were set forth in full herein.

6.02 As a result of Defendant's defamation, Plaintiff has suffered and will continue to suffer pecuniary losses including, but not limited to, lost wages and benefits associated with his employment, lost contracts, and lost sponsorships.

6.03 As a further result of Marriott's defamatory conduct, Plaintiff has suffered non-pecuniary losses, including, among others, humiliation, damage to professional and personal reputation, undue stress, anxiety, and anguish, and other non-pecuniary losses.

### *Exemplary Damages*

6.04 Plaintiff incorporates by reference each and every allegation contained in the paragraphs above as if the same were set forth in full herein.

6.05 Defendants' acts complained of herein were committed knowingly, willfully, intentionally, and with actual awareness or actual malice. In order to punish Defendants for such unconscionable actions and to deter the same in the future, Plaintiff seeks recovery against Defendants for exemplary damages pursuant to TEX. CIV. PRAC. & REM. CODE § 41.003(a).

6.06 Defendant has acted with malice and/or reckless indifference to Plaintiff's state-protected rights, thereby entitling him to punitive damages under TEX. CIV. PRAC. & REM. CODE § 41.003(a).

## VII.
## CONDITIONS PRECEDENT

7.01   All conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

## VIII.
## Alternative Pleading

8.01   Per Texas Rule of Civil Procedure, Rule 48, Plaintiff has pled, and/or reserves the right to plead, causes of action and/or remedies in the alternative. *See* Tex. R. Civ. P. 48.

## IX.
## RULE 193.7 NOTICE

9.01   Pursuant to Texas Rule of Procedure 193.7, Plaintiff hereby gives notice to all parties that he intends to use all documents produced in response to written discovery in any pre-trial hearing and at trial.

## X.
## RESERVATIONS

10.01   Plaintiff reserves the right to bring additional causes of action against Defendant and to amend this Petition as necessary.

## XI.
## JURY DEMAND

11.01   Plaintiff hereby demands a jury trial on all ultimate fact issues in accordance with Texas law and tenders the appropriate fee with this petition.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and that upon a trial on the merits, this Court grant recovery against Defendant as follows:

a)   Actual damages;

b)   Exemplary damages pursuant to TEX. CIV. PRAC. & REM. CODE § 41.003(a);

c) Costs of court

d) Pre- and post-judgment interest; and

e) All such further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

**MCCATHERN, PLLC**

*/s/ Levi G. McCathern, II*
Levi G. McCathern, II
State Bar No. 00787990
lmccathern@mccathernlaw.com
Scott J. Becker
State Bar No. 90001624
sbecker@mccathernlaw.com
Jesse L. Cromwell
State Bar No. 24073067
jcromwell@mccathernlaw.com
3710 Rawlins, Suite 1600
Dallas, Texas 75219
Telephone: (214) 741-2662
Facsimile: (214) 741-4717

**ATTORNEYS FOR PLAINTIFF**

