IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| MICHAEL IRVIN,<br>*Plaintiff*<br><br>v.<br><br>MARRIOTT INTERNATIONAL, INC.<br>and JANE DOE,<br>*Defendants* | CIVIL ACTION NO. 4:23-CV-00131 |

**PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Michael Irvin ("Irvin") and asks the Court to grant expedited discovery under the Federal Rules of Civil Procedure and in support thereof Irvin would respectfully show the Court as follows:

**I.
INTRODUCTION**

1.01 Defendant took affirmative steps to disparage Irvin to the NFL—and ultimately the public at large—citing its security footage as evidence of Irvin's alleged misconduct. Defendant had to endure being pulled off the airwaves for the biggest spectacle in American television and millions of viewers operating under a misguided belief that he had assaulted someone. Now Irvin simply wants produced the very same evidence that caused his life to be upturned. The same evidence that the Defendant voluntarily turned over to the NFL.

1.02 Irvin Michael Irvin sued Marriott International, Inc. ("Defendant"), for defamation and tortious interference with an existing contract on February 9, 2023, in Collin County, Texas.

1.03    Prior to the above lawsuit being filed, Irvin's representatives requested from Defendant and its representatives—Including Defendant's employees in charge of security at the Renaissance Phoenix Downtown Hotel ("the Hotel")—copies of the security footage demonstrating the alleged misconduct along with any information regarding the facts of the allegations. To this day—despite numerous requests from security, Hotel management, and other representatives of Defendant—Irvin still does not know the who, what, when, or where of the allegations levied against him.

1.04    After suit was filed, Irvin again sought copies of the footage from Defendant in the form of a preservation of evidence letter, attached hereto as **Exhibit A**. Again, Irvin was stonewalled and denied a copy of the very footage that would demonstrate the alleged misconduct by Irvin.

1.05    As a result, on February 16, 2023, Irvin filed his Motion for Expedited Discovery with the state court, and that motion was granted the same day. This resulted in the court ordering Defendant to answer Irvin's discovery requests by 5:00 pm Central Standard Time on Monday, February 20, 2023. (**Exhibit B** – *Order on Irvin's Motion for Expedited Discovery*).

1.06    On February 20, 2023, the date that Defendant's discovery responses were due, Defendant filed its notice of removal essentially nullifying the State Court's order. Along with the notice of removal, Defendant served its Response to "Irvin's Improper Expedited Discovery Requests," attached hereto as **Exhibit C**. Through baseless objections, Defendant once again has denied Irvin the opportunity to view and witness the very footage that was used to evict him from his hotel room and was the basis of Defendant surreptitiously accusing Irvin of misconduct to the National Football League ("NFL"), resulting in his suspension from the NFL Network.

1.07    Irvin, now before this Court, once again asks that he be granted the opportunity to conduct limited expedited discovery related to security footage of the Hotel on the date of the incident so that he, the NFL, and anyone else interested in the truth, will be able to witness Irvin's conduct, judge for themselves, and cease the harm inflicted on Irvin each day that these defamatory allegations are allowed to persist.

## II.
## BACKGROUND FACTS

2.01 On or about the night of February 5, 2023, Irvin returned to the Hotel after an evening out. After spending time with his fans, Irvin started towards the elevator to his room, but was called back by wait staff who wanted to meet him. The innocent and brief interaction—lasting less than one minute—between Irvin and this anonymous wait staff is believed to be the basis of the defamatory and tortious statements made by Defendant to the NFL though no clarity has ever been provided by Defendant on what *misconduct* took place that evening.

2.02 Much to Irvin's surprise, he was roused the next morning by the Hotel's private security force attempting to remove him from the Hotel without explanation. Confused, Irvin agreed to leave the premises in an effort to cooperate with Defendant's employees without ever seeing the security footage allegedly demonstrating his misconduct.

2.03 Little did Irvin know; Defendant had also contacted his employer—the NFL—to further embarrass and defame him. The NFL responded by immediately removing Irvin from all scheduled programming surrounding the Super Bowl on NFL Network and ESPN. Despite Irvin's diligent efforts, he has been unable to ascertain who specifically made these allegations to the NFL, and why they were reported to the NFL without any further investigation by Defendant.

2.04 The fact that Defendant reported the incident to the NFL and then refused to follow up on its investigation is extremely peculiar given Defendant's Harassment Prevention Policy, attached hereto as **Exhibit D**, in which the company states:

> Marriott policy requires a prompt and thorough investigation of all sexual harassment complaints. Sexual harassment complaints and investigations are, to the extent possible, strictly confidential. Information concerning sexual harassment complaints and investigations is shared internally or externally only with persons who have a legitimate need to know.

(Ex. D at 2). The policy goes on to claim "[a]s a result of Marriott's 'Respect for All' culture, most harassment complaints that the Company receives are promptly and effectively investigated and resolved at a very early stage." *Id.* at 3. Unfortunately for Irvin, this meant ignoring eyewitness statements and refusing to take remedial action.

2.05 After Irvin was shut down by Defendant, he began to gather information on his own. Irvin, through his investigation, was able to locate and identify witnesses who observed the interaction between himself and the anonymous wait staff (**Exhibits E, F, and G**). One of the witnesses, Phil Watkins, described Irvin's interaction with Defendant's employee as follows:

> "It was a positive, friendly conversation. They had a brief interaction, it was 30, 40 seconds, he kept his distance at all times, stood about a meter away from her, they ended with a handshake, and he literally turned around and went to the lift."

(TMZ, *Alleged Witnesses In Michael Irvin Incident Recount Story, Back Hall of Famer: Michael Irvin Alleged Witnesses Recount Story After Misconduct Allegation*, Feb. 10, 2023, https://www.tmz.com/2023/02/10/michael-irvin-alleged-witnesses-tells-story-nfl-network-super-bowl-misconduct/). When asked specifically if Irvin's conduct was improper, Watkins stated ""Not at all. Not at all. There was a little bit of laughter. Obviously a jovial conversation…" *Id.* A second witness, Bryn Davis verified Watkins account stating:

> "That's why this morning I felt sick when I saw it because it's the first time I was ever, firsthand experience where something like that happened that was just fabricated. It was a totally normal conversation… And the bar was relatively packed. It was a quick conversation in a crowded area. He went on his way and I never thought about it again."

*Id.* With three witnesses to the alleged incident, all saying that after shaking the wait staff's hand, Irvin left the lobby, got on the elevator to go to his room, and that the wait staff returned to her post, seemingly unaffected by the conversation she had with Irvin, Defendant still refused to reopen its "investigation" or correct the wrong inflicted upon Irvin forcing him to file suit.

2.06 As a result of the defamatory statement and tortious interference of Defendant, the Damage to Irvin's reputation is on-going and continuous—these allegations caused Irvin to lose appearances and continues interfere with Irvin's ability to earn a living. The NFL has indefinitely suspended Irvin, and Defendant's actions and refusal to release requested information have made it impossible for Irvin to clear his name. Specifically, Irvin has been forced to cancel personal appearances with Cigna and PepsiCo, among others. Moreover, Irvin was forced to cancel his Michael Irvin Charity Football Game, and an appearance for the Wounded Warrior Project, a charity that supports veterans wounded in combat.

2.07 Defendant is the only party that is delaying a proper investigation, and the timing of its removal is clearly indicative of its desire to out-maneuver the State Court's order to rather than provide the requested footage. The burden on Defendant is minimal as the video should already be in a viewable format. Defendant took it upon itself to report misconduct to Irvin's employer. It is only just and equitable that Defendant provide the evidence of this misconduct to Irvin and his employer now.

2.08 The NFL combine, where prospective football players go to demonstrate their talents in hopes of being signed or drafted, is scheduled for two weeks from now. Irvin is currently

expected to work during the NFL combine, but he will likely be removed from his role if Defendant is not made to turn over whatever alleged evidence of misconduct that they have in their possession.

## III.
### ARGUMENTS & AUTHORITIES

**A. Federal Courts have granted expedited discovery for good cause when the discovery sought is reasonably limited.**

3.01  Federal Rule of Civil Procedure 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)" unless the Court orders otherwise. *N. Am. Deer Registry, Inc. v. DNA Sols., Inc.*, No. 4:17-CV-00062, 2017 WL 1426753, at *1 (E.D. Tex. Apr. 21, 2017) (citing *Combat Zone Corp. v. John/Jane Does 1-2*, No. 2:12-cv-00509, 2012 WL 6684711, at *1 (E.D. Tex. Dec. 21, 2012)). "An increasing majority of district courts, including several in the Fifth Circuit, have adopted a 'good cause' standard to determine whether to permit such expedited discovery." *Id*. "In a 'good cause' analysis, a court must examine the discovery request 'on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." *Id.* (citing *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011) (citation omitted)). "The burden of showing good cause rests on the party seeking the expedited discovery." *Id*. "Moreover, the subject matter related to requests for expedited discovery should be narrowly tailored in scope." *Id*. In sum, expedited discovery is appropriate when reasonably limited and un-burdensome.

3.02 Much like this District, other district courts have applied the flexible standard of "reasonableness" and "good cause." *Stern v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y. 2007). In *Stern*, the Irvin had alleged libel against the defendant and sought expedited discovery regarding whether or not the defendant had tampered with two witnesses by paying them. *Id.* at 454. The

court determined the limited expedited discovery was "reasonable in light of all the circumstances." *Id.* at 457. In *Stern*, the Defendant insisted that she had "absolutely no intent to interfere with any witnesses" but the evidence before the court demonstrated contradicting facts. *Id.* The evidence showed the defendant had attempted offered to pay money to the witnesses to validate statements from her book. *Id.*

3.03 The Court in reaching its conclusion to grant the motion for limited expedited discovery reasoned:

> "It may be, as [the defendant's] attorney argues, that the transcripts do not accurately 'portray all of the facts' and that 'the full evidence' will paint 'a decidedly different picture.'… The transcripts surely, however, establish *good cause to believe* that [the defendant] was attempting to tamper with the two witnesses. [The Irvin's] desire to explore this question expeditiously—before full and normal discovery—is reasonable and understandable, for if [the defendant] was actually attempting to obstruct justice, her efforts could very well have endangered the integrity of the judicial process.

*Id.* at 457-58. The court in *Stern* also rejected the defendant's argument that she would be prejudiced if the Court ordered expedited discovery, including depositions. *Id.* at 458. The court reasoned it was not prejudice simply because defense's counsel would "have to work harder and quicker to become 'fully acquainted with the facts.' " *Id.*

3.04 Before this Court is a much simpler, less intrusive, less burdensome, and equally important request for expedited discovery; Irvin deserves to see the security footage that has led to the derailment of his livelihood and continues to inflict harm upon him so that he may seek to exonerate himself with the NFL and be reinstated on the NFL Network.

B. **The evidence before this court demonstrates there is *good cause* to grant Irvin's extremely limited motion for expedited discovery.**

3.05    Irvin wants to see the recording. Irvin wants to know what investigation took place before his employer was notified of his alleged misconduct resulting in his indefinite suspension

and continued damage to his character in the public eye. If Irvin cannot obtain this evidence he seeks in this motion, he will suffer imminent harm due to his continued inability to provide the NFL with exculpatory evidence so that he can return to work.

3.06 Moreover, much like *Stern*, the evidence before this Court is that the harm Irvin is suffering is due directly to the Defendant. Defendant will surely claim that this case is different than *Stern* because there is no evidence that it has tampered with witnesses. In contrast, Defendant is not taking any action by not producing the evidence to Irvin or the NFL. However, in so arguing, Defendant must admit that its inaction is a decision to withhold evidence that is surely discoverable and, by unnecessarily withholding evidence, it is withholding the truth. Sequestering evidence has the same effect as tampering with evidence—it prevents the revelation of the truth. Truth that could be discovered by the simple transfer of an electronic share-file containing the footage at issue.

3.07 The footage and information will assist in avoiding unnecessary delays as this litigation proceeds. Irvin is not demanding depositions or inspections of the premises and the security system; just the footage of the alleged misconduct. The burden of production on the Defendant is minimal, and the requested discovery reasonably tailored to the dispute at hand and limited in scope. This Court should grant Irvin's motion for expedited discovery and order Defendant to respond to the request below.

## IV.
### SPECIFIC REQUESTS

4.01 For good cause, Irvin seeks that the Court authorize expedited discovery and order Defendant to produce:

a. **Request For Production 1.** Any and all video recordings, written reports, and/or witness statements gathered that pertain to Michael Irvin's stay at the Renaissance Phoenix Downtown Hotel in February 2023.

4.02     Irvin requests that this expedited discovery be produced no later than Friday, February 24, at 5:00 p.m. Central Standard Time.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Irvin asks the Court to grant this motion and order Defendant to respond to Irvin's limited discovery request.

Respectfully submitted,

*/s/ Levi G. McCathern, II*
Levi G. McCathern, II
State Bar No. 00787990
lmccathern@mccathernlaw.com

Scott J. Becker
State Bar No. 90001624
sbecker@mccathernlaw.com

Jesse L. Cromwell
State Bar No. 24073067
jcromwell@mccathernlaw.com

MCCATHERN, PLLC
3710 Rawlins St., Suite 1600
Dallas, Texas 75219
Telephone: (214) 741-2662
Facsimile: (214) 741-4717

ATTORNEYS FOR IRVIN

## CERTIFICATE OF CONFERENCE

I hereby certify that I have complied with the meet and confer requirements in Local Rule CV-7(h) by conferring with Nathan D. Chapman, counsel for Defendant Marriott International, Inc., by telephone on February 21, 2023. The relief requested herein is opposed by Defendant, and an agreement could not be reached, leaving an open issue for the court to resolve.

                                                                                   */s/ Levi G. McCathern, II*
                                                                                       Levi G. McCathern, II

## CERTIFICATE OF SERVICE

I certify that on February 22, 2023, I filed the foregoing pleading using the Court's electronic filing system, and same was e-served on Defendant's counsel of record, as follows:

Kendell Kelly Hayden
Cozen O'Connor
1717 Main St., Suite 3100
Dallas, TX 75201

and

Nathan D. Chapman
C. Celeste Creswell
Kabat Chapman & Ozmer, LLP
171 17th St. NW, Suite 1550
Atlanta, GA 03063

                                                                                   */s/ Levi G. McCathern, II*
                                                                                      Levi G. McCathern, II