**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **MICHAEL IRVIN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | **CIVIL ACTION NO. 4:23-cv-131** |
| **MARRIOTT INTERNATIONAL, INC.** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

**<u>DEFENDANT MARRIOTT INTERNATIONAL, INC.'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER
VENUE</u>**

## <u>STATEMENT OF ISSUES TO BE DECIDED BY THE COURT</u>

Pursuant to Local Rule CV-7(a)(1), Defendant Marriott International, Inc. ("Marriott") identifies the following issues to be decided by the Court in this dispositive motion:

1.       Whether pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, this action should be dismissed for lack of personal jurisdiction as to Marriott.

2.       Whether, in the alternative and pursuant to 28 U.S.C. § 1404(a), the case should be transferred to the United States District Court for the District of Arizona for the convenience of the parties and witnesses and in the interest of justice.

## I.       <u>INTRODUCTION</u>

Plaintiff Michael Irvin's ("Plaintiff") claims in this action relate exclusively to his own alleged actions and statements and the alleged actions and statements of employees of the "Renaissance Phoenix Hotel & Spa" in Phoenix, Arizona (the "Hotel").[1]  Specifically, Plaintiff claims that, in February 2023, he traveled to Phoenix to work as a sports commentator for the Super Bowl and stayed at the Hotel.  While staying there, Plaintiff claims he interacted with a female hotel employee who later reported to the Hotel's management that Plaintiff made harassing and inappropriate comments to her.   Plaintiff further alleges that the Hotel's management falsely reported to the NFL that he had behaved improperly toward the female employee, causing the NFL to remove him from all scheduled programming related to the Super Bowl.  Based on these allegations, *__all of which purportedly occurred exclusively in Arizona__*, Plaintiff filed this lawsuit in Texas, asserting two common-law tort claims against Marriott: (1) defamation; and (2) tortious interference with a business relationship.

---

[1] Plaintiff has referred to the hotel throughout his Complaint erroneously as the "Renaissance Phoenix Hotel & Spa," which does not exist.

Given Plaintiff's allegations and Marriott's evidence submitted with this Motion, the Court must dismiss this action because Plaintiff cannot meet his burden to show that Marriott is subject to personal jurisdiction in Texas.  That is, Plaintiff cannot show that any of the necessary elements for personal jurisdiction are met here.  First, as a matter of law, the Court does not have general jurisdiction over Marriott because Marriott is not incorporated in Texas, does not have a principal place of business there, and cannot otherwise be considered "at home" there.  Second, the Court does not have specific jurisdiction over Marriott, as Plaintiff concedes that none of the facts and circumstances giving rise to his claims occurred in Texas.  Indeed, Marriott does not own or operate the Hotel and Plaintiff does not allege, much less attempt to show, that his claims "arise out of or relate to" Marriott's limited contacts with Texas.  Under the Supreme Court's binding decision in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), therefore, the Court must dismiss this action for lack of personal jurisdiction.

Alternatively, if the Court does not dismiss this action, Marriott respectfully requests that the Court transfer the case to the District of Arizona pursuant to 28 U.S.C. § 1404(a) for fairness reasons and the convenience of the parties.  As shown below, none of the relevant documents or witnesses (other than Plaintiff) are in this judicial district, and under the choice of law rules that either court would be bound to apply, Arizona law is likely to apply to Plaintiff's tort claims, both of which arise out of conduct that Plaintiff concedes occurred exclusively in Arizona.  Thus, the Court should transfer this action to the District of Arizona if it does not dismiss it outright.

## II.  PROCEDURAL HISTORY AND RELEVANT FACTUAL BACKGROUND

### A.  Procedural History and Plaintiff's Allegations

On or about February 9, 2023, Plaintiff commenced the above-styled action against Defendant in the Superior Court of the 429th Judicial District Court, Collins County, Texas,

Cause No. 429-00627-2023 (the "State Court Action").  ECF 3 (Plaintiff's State Court Petition).

On February 16, 2023, Plaintiff obtained an *ex parte* order from the State Court requiring

Marriott to respond to certain discovery requests by no later than February 20, 2023, without

regard to whether the State Court had jurisdiction over Marriott, whether Marriott is a proper

party to this action, or whether Marriott has possession of any of the documents and information

Plaintiff demanded.  ECF 5-2 (State Court Order on Plaintiff's Motion for Expedited Discovery).

On February 20, 2023, Marriott removed this the State Court Action to this Court based on

diversity jurisdiction under 28 U.S.C. § 1332 and objected to Plaintiff's discovery based on, *inter*

*alia*, lack of personal jurisdiction and improper venue.  ECF 1; ECF 5-3.

In the Petition, Plaintiff asserts claims for defamation (Count One) and tortious

interference with a business relationship (Count Two) against Marriott, both of which arise out

of a series of events that allegedly occurred at the Hotel in the days leading up to the 2023 Super

Bowl.  Plaintiff alleges that, in February 2023, he traveled to Phoenix to work as a sports

commentator for the Super Bowl and stayed at the Hotel.  ECF 3 ¶ 4.01.  On or about the night

of February 5, 2023, Plaintiff alleges he returned to the Hotel, had several "pleasant" interactions

with fans, including a female Hotel employee, and went to bed.  *Id.* ¶ 4.03.  Plaintiff alleges he

was subsequently woken up by Hotel security and removed from the Hotel because of a

complaint the Hotel received from a female employee about his conduct toward her.  *Id.* ¶ 4.04.

Plaintiff further alleges that "one of the managers of the Hotel reported false information to the

NFL about Plaintiff[,] accusing him of improper behavior towards a hotel employee."  *Id.* ¶ 4.06.

As a result, Plaintiff claims that the NFL pulled him from all scheduled programming

surrounding the Super Bowl.  *Id.*  Plaintiff claims the Hotel manager's statements about him to

the NFL were false and defamatory, allegedly causing him over $100,000,000 in damages.  *Id.* ¶ 4.08.

**B.     Marriott's Limited Contacts with Texas**

Marriott is a Delaware corporation with its principal place of business in Bethesda, Maryland.  Declaration of Andrew P.C. Wright ("Wright") Decl. ¶ 6; ECF 3 ¶ 2.02; ECF 1 ¶ 8. It is a worldwide operator, franchisor, and licensor of hotel, residential and timeshare properties under numerous brand names at different price and service points.   Wright Decl. ¶ 7.

Marriott operates, franchises, or licenses nearly 8,300 properties worldwide in its portfolio of brands, but Marriott (including its subsidiaries and affiliates) owns only owns 21 of those of properties, none of which are in Texas.  *Id.* ¶¶ 7, 10.  For the vast majority of properties in the Company's worldwide system that Marriott does not own, the Company has franchising and licensing arrangements that permit hotel owners and operators to use many of its lodging brand names and systems. *Id.* ¶ 9.  As a franchisor and licensor, Marriott and its affiliates do not own, operate, manage, or handle the day-to-day operation of the hotel.  *Id.*  Excluding the handful of properties owned by Marriott, nearly seventy-five percent of the properties in its worldwide portfolio are franchised or licensed by Marriott International or its affiliates to independent third parties that own and operate the properties. *Id.* ¶ 8.  Most of the remaining properties are managed by Marriott International or its affiliates but owned by an independent third party.  *Id.*

Approximately 598 of the properties that Marriott manages, franchises, or licenses are in Texas, reflecting only about 7.2% of the properties in its global portfolio.  *Id.* ¶ 10.  As of December 31, 2022, Marriott did not own ***any*** of the Marriott-affiliated properties in Texas.  *Id.* Marriott does not own any hotel, residential, or timeshare properties in Texas and only directly

employs approximately 200 employees in Texas out of the approximately 140,000 worldwide employees of Marriott and its subsidiaries and affiliates. *Id.* ¶ 11.

### III.   ARGUMENT

**A.   The Applicable Legal Standard**

The Fifth Circuit has established a "two-step inquiry" that courts conduct "when a defendant challenges personal jurisdiction." *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 395–96 (E.D. Tex. 2022) (Mazzant, J.) (citing *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993)). First, the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Id.* Second, the court must establish whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *Id.* As to the first prong, "the Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution." *Id.* (citing *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 936 F.3d 90, 93 (5th Cir. 1992)); *see also* Tex. Civ. Prac. & Rem. Code §§ 17.042, 17.044. Thus, the only question is whether the exercise of jurisdiction over Marriott is constitutional. *Id.* Under constitutional standards, personal jurisdiction may be either "general" or "specific." *Daimler AG v. Bauman*, 571 U.S. 117, 121 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

"[W]hen a nonresident defendant files a motion to dismiss for lack of personal jurisdiction, the burden shifts to the plaintiff to establish that *in personam* jurisdiction exists." *Palmer v. Idalia Llorens Collection Agency, Inc.*, 434 F. Supp. 3d 462, 466–67 (E.D. Tex. 2020). To satisfy his burden, Plaintiff must present facts sufficient to make out a *prima facie* case supporting jurisdiction, assuming the Court rules without holding an evidentiary hearing. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). However, if the court holds an

evidentiary hearing, Plaintiff "must establish jurisdiction by a preponderance of the evidence." *In re Chinese Manufactured Drywall Prods. Liab. Lit.*, 742 F.3d 576, 585 (5th Cir. 2014).[2]

Here, Plaintiff cannot meet either burden.  Indeed, Plaintiff's Petition fails even to allege facts sufficient to make out a *prima facie* case supporting personal jurisdiction.  Nor could he do so, as the evidence confirms that Marriott is not subject to general or specific jurisdiction in Texas.  As shown below, Marriott is not subject to general jurisdiction because it is not at "home" in Texas, where its operations are extremely limited.  Marriott also is not subject to specific jurisdiction because Plaintiff's claims are based entirely on events that took place at a hotel in Phoenix, Arizona (a hotel that Marriott does not own or operate).

**B.    This Court Does Not Have Personal Jurisdiction Over Marriott.**

      1.    <u>Marriott is Not Subject to General Jurisdiction in Texas</u>

General jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum."  *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984).  In other words, it permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world—it is blind to the facts and circumstances of the dispute.  A corporation is subject to a court's general jurisdiction in the forum "in which the corporation is fairly regarded as at home." *Goodyear v. Brown*, 564 U.S. 915, 924 (2011).  A corporation is considered at home in its principal place of business and state of incorporation.  *Daimler*, 571 U.S. at 137.

---

[2] Because the undisputed facts demonstrate that Marriott is not subject to personal jurisdiction in Texas, jurisdictional discovery, if requested, would not be appropriate here and would serve no purpose.  *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) ("When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted.").  For the reasons discussed below, no amount of information concerning the Marriott's contacts with Texas could strengthen Plaintiff's case for asserting personal jurisdiction.

For general jurisdiction to exist elsewhere, the corporation's activities in a state must be "so '*continuous and systematic*' as to render [it] essentially at home." *Id.* at 127 (quoting *Goodyear*, 564 U.S. at 919) (emphasis added).  Only in "an *exceptional* case" will "a corporation's operations in a forum other than its formal place of incorporation or principal place of business [] be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19 (emphasis supplied); *see also Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) ("It is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.").  Moreover, general jurisdiction "calls for an appraisal of a corporation's activities *in their entirety*, nationwide and worldwide.  A corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 571 U.S. at 139 n.20 (emphasis added).

Under this standard, the Court does not have general jurisdiction over Marriott.  The only connection to Texas that Plaintiff has alleged is that Marriott "is registered with the Texas Secretary of State to do business in the State of Texas" and may be served with process via a registered agent in Texas.  ECF 3 ¶ 2.02.  This is woefully insufficient to subject Marriott to general jurisdiction in Texas under well-settled law.  *See, e.g.*, *Nunes*, 582 F. Supp. 3d at 396 (Mazzant, J.) (no general jurisdiction even taking plaintiff's assertion that defendant maintains a business presence in Texas" as true because "the Supreme Court has made clear that doing business within a state is no longer a sufficient basis for general personal jurisdiction").

Of the nearly 8,300 properties in Marriott's worldwide portfolio, Marriott owns only 21 of them.  Wright Decl. ¶ 7.  None of the properties it owns are in Texas.  *Id.*  Only about 7.2% of the properties in Marriott's global portfolio are in Texas.  *Id.* ¶ 10.  But Marriott does not own any of these properties—third parties do.  *Id.*  Indeed, Marriott does not own any hotel,

residential, or timeshare properties in Texas.  *Id.* ¶ 11.  General jurisdiction over Marriott in Texas therefore does not exist, as another Texas federal court recognized. *Victor Elias Photography, LLC v. Leonardo Worldwide Corp.*, No. CV H-18-2142, 2019 WL 3713724, at *2 (S.D. Tex. Jan. 25, 2019) ("The Court finds Elias fails to show this is an exceptional case that would give rise to general jurisdiction over Marriott when Marriott is incorporated in Delaware and has its principal place of business in Bethesda, Maryland."); *see also Dallas Texans Soccer Club v. Major League Soccer Players Union*, 247 F. Supp. 3d 784, 789 (E.D. Tex. 2017) (Mazzant, J.) (no general jurisdiction where defendant's "contacts in Texas [] only represent[ed] a portion of its total activity" throughout the country); *Butowsky v. Gottlieb*, No. 4:19-CV-180, 2020 WL 5757223, at *4 (E.D. Tex. Sept. 28, 2020) ("operating a Texas office" and employing a relatively small number of employees in Austin, Texas" not sufficient to confer general jurisdiction).

Other federal courts throughout the country, like the court in *Elias*, have consistently rejected attempts by plaintiffs to argue that Marriott is "at home" anywhere besides its state of incorporation (Delaware) or its principal place of business (Maryland).  *See, e.g.*, *Fidrych v. Marriott, Int'l, Inc.*, 952 F.3d 124, 134 (2020) (no general jurisdiction over Marriott in South Carolina "[b]ecause there is nothing that would distinguish Marriott's relationship with South Carolina from its relationship with any of the other states where it does business but where it is not incorporated or headquartered"); *Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio*, 486 F. Supp. 3d 1353, 1360 (N.D. Cal. 2020) (no general jurisdiction over Marriott in California); *Lescano v. Marriott*, 2017 WL 10299576, at *3 (M.D. Fla. Aug. 9, 2017) (no general jurisdiction over Marriott in Florida); *DeGregorio v. Marriott Int'l, Inc.*, No. CV 17-3867, 2017 WL 6367894, at *4 (E.D. Pa. Dec. 13, 2017) (no general jurisdiction over Marriott in Pennsylvania

because "in the post-*Daimler* legal landscape, the fact that an out-of-state entity transacts business, even substantial business, in [a forum state] is insufficient to establish that the entity is "at home" in [that state]"); *Brighter Sky Prods., LLC v. Marriott Int'l, Inc.*, No. 5:17-CV-03254, 2018 WL 2248601, at *4 (S.D. W. Va. May 16, 2018) (no general jurisdiction in West Virginia). The same result should obtain here, as accepting Plaintiff's assertion that Marriott is subject to general jurisdiction in Texas would mean that Marriott would be subject to general jurisdiction in every state where its owned, operated, franchised or licensed hotels are located.  As the Fourth Circuit recently recognized in a similar case, this is "precisely the 'unacceptably grasping' argument rejected by the *Daimler* Court."  *Fidrych*, 952 F.3d at 134 (quoting *Daimler*, 571 U.S. at 138).  This is not an "exceptional case" that would confer personal jurisdiction over Marriott on this Court.  *Daimler*, 571 U.S. at 139 n.19.

Accordingly, Plaintiff cannot present facts sufficient to make out even a *prima facie* case supporting jurisdiction.

2. <u>Marriott is Not Subject to Specific Jurisdiction in Texas.</u>

Plaintiff cannot establish specific jurisdiction either.  For a court to exercise specific jurisdiction over a defendant, a plaintiff must establish that the defendant: (1) purposefully directed activities at or consummated some transaction with the forum, or performed some act by which it purposefully availed itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws; (2) the plaintiff's claims arise out of or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice (*i.e.*, it is reasonable).  *Nunes*, 582 F. Supp. 3d at 398 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Here, even if Plaintiff could establish Marriott has sufficient minimum contacts with Texas to satisfy the first element in the analysis (he cannot), the second element—whether Plaintiff's claims arise out of or relate to Marriott's forum-related activities—is dispositive and fatal to any assertion of specific jurisdiction Plaintiff might make.[3]  As shown above, Marriott's contacts with Texas are extremely limited.  But regardless of those contacts, it is undisputed that Plaintiff's claims do not in any way arise out of or relate to Marriott's contacts with Texas.  As the Fifth Circuit has recognized, when it comes to defamation claims, the forum must be the "focal point" of the case for jurisdiction to be proper.  *Clemens v. McNamee*, 615 F.3d 374, 379 (5th Cir. 2010) (citing *Calder v. Jones*, 465 U.S. 783, 788–89 (1984)).  "In other words, a plaintiff must establish that Texas was the 'focal point' of **both** the challenged [statements] and the harm suffered."  *Nunes*, 582 F. Supp. 3d at 399 (emphasis added) (citing *Calder*, 465 U.S. at 788–89).

Here, Texas was not the "focal point" of either the allegedly defamatory statements or the harm suffered.  Plaintiff's claims (for defamation and tortious interference) arise out of events that took place entirely at the Hotel in Phoenix, Arizona.[4]  ECF 3 ¶¶ 4.01–4.08 (describing pertinent facts giving rise to Plaintiff's claims); *see also* ECF 5 ¶¶ 2.02–2.08 (same).  Specifically, Plaintiff alleges that: (1) a Hotel employee and a Hotel manager; (2) made defamatory statements in Arizona about him to the NFL concerning his conduct at the Hotel, which is located in Arizona; and (3) as a result of the Hotel's actions, he was removed from the

---

[3] As for whether exercising personal jurisdiction over Marriott would be fair and reasonable, the relevant factors overlap significantly with the factors relevant to whether a transfer of venue is appropriate pursuant to 28 U.S.C. § 1404(a).  Those factors are discussed at length below, and for those reasons, it would not be fair or reasonable for this Court to exercise jurisdiction over Marriott in this case.

[4] In fact, because Marriott does not own or operate the Hotel, Plaintiff's claims do not arise out of relate to Marriott's contacts with *any* forum.

Hotel and prohibited from covering the Super Bowl, which occurred in Arizona.  In short, Plaintiff's claims have no relation to Texas whatsoever, let alone Marriott's extremely limited contacts with the state.

Accordingly, Plaintiff cannot establish that this Court has specific jurisdiction over Marriott in this action.  *See, e.g.*, *Clemons*, 615 F.3d at 380 (no specific jurisdiction in defamation case where "the statements did not concern activity in Texas; nor were they made in Texas or directed to Texas residents any more than residents of any state"); *Butowsky*, 2020 WL 5757223, at *3 (no specific jurisdiction where "allegedly defamatory [statements] posted by [defendant] do not focus on Texas activity").

Because Plaintiff cannot make a *prima facie* showing that Marriott is subject either to general or specific jurisdiction in Texas, this Court lacks jurisdiction over Marriott and must dismiss Plaintiff's claims.[5]

## C.     Alternatively, This Court Should Transfer This Case to the United States District Court for the District of Arizona (Phoenix Division).

In the unlikely event that the Court declines to dismiss this action pursuant to Rule 12(b)(2), Marriott respectfully requests that the Court transfer the case to the United States District Court for the District of Arizona, Phoenix Division, pursuant to 28 U.S.C. § 1404(a) for reasons of fairness and the convenience of the parties.  For many of the same reasons that Marriott is not subject to personal jurisdiction in Texas, the District of Arizona is unquestionably the appropriate venue for this case.

### 1.     The Applicable Legal Standard.

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

---

[5] *See* n.3, *supra*.

28 U.S.C. § 1404(a).  The goals of Section 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)

The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties have consented to a particular jurisdiction.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  Once that threshold inquiry is met, the Fifth Circuit has held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight."  *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).

The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*) ("*Volkswagen II*").  The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.  *Id.*  The plaintiff's choice of venue is ***not*** an independent factor in this analysis.

2.   <u>This Case Could Have Been Brought in the District of Arizona.</u>

Although Marriott does not own or operate the Hotel and is an improper party such that this case could not have been brought against it in *any* forum, Plaintiff ***could*** have filed this action in Arizona.  First, subject-matter jurisdiction exists because the parties are citizens of

different states and the alleged amount in controversy exceeds $75,000, exclusive of interest and costs.  *See* ECF 1 (Notice of Removal) ¶¶ 6–9; 28 U.S.C. § 1332.  Second, an Arizona federal court would have personal jurisdiction over this matter because, as discussed above, the allegedly defamatory statements were made exclusively in Arizona and concerned Plaintiff's conduct in Arizona.  *See Clemons*, 615 F.3d at 380.  Third, venue is proper in the Phoenix Division of the District of Arizona pursuant to 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in that judicial district.

      3.      <u>The Private Interest Factors Favor Transfer to the District of Arizona.</u>

      *a.   The "relative ease of access to sources of proof" factor favors transfer.*

The private interest factors favor transfer in this case.  First, as to "the relative ease of access to sources of proof," courts look to where evidence, such as documents and physical evidence, is stored.  *Volkswagen II*, 545 F.3d at 316.  This factor favors transfer because virtually all the relevant documents and physical evidence are likely to be found in Arizona, while ***none*** are in Texas (let alone in this judicial district).[6]  Plaintiff concedes as much in his pending Motion for Expedited Discovery, in which he argues that video footage from the Renaissance Phoenix Downtown Hotel is the key piece of evidence in this case.  *See generally* ECF 5.

      *b.   The "availability of compulsory process to secure the attendance of witnesses" factor weighs in favor of transfer.*

The second and third factors both concern where potential witnesses—who would either need to be subpoenaed or would willingly appear—are located.  Witness convenience may be the

---

[6] That documents may be stored electronically does not undermine the importance of their location.  *Kranos IP Corp. v. Riddell, Inc.*, No. 2:17-CV-443, 2017 WL 3704762, at *11 (E.D. Tex. Aug. 28, 2017) ("[T]he Fifth Circuit has made clear that the fact that 'access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous.'" (quoting *Volkswagen II*, 545 F.3d at 316)).

most important factor in the Section 1404(a) analysis. *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir 2009) (applying Fifth Circuit law). With respect to subpoenaed witnesses, the court cannot compel nonparty witnesses to travel more than 100 miles, unless it is within the same state and will not cause the witnesses to incur substantial travel expenses. *See* Fed. R. Civ. P. 45(c)(1)(A), 45(c)(1)(B)(ii), 45(d)(3)(A)(ii); *see also Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, No. 4:13-CV-705, 2015 WL 123852, at *5 (E.D. Tex. Jan. 7, 2015) (Mazzant, J.) Here, any necessary third-party witnesses are the Hotel guests or patrons and hourly employees of the Hotel who were percipient witnesses to the alleged interaction between Plaintiff and a Hotel employee. ECF 3 ¶¶ 4.01–4.08; ECF 5-5, 5-6, 5-7. Those witnesses are likely to be local employees of the Hotel (not Marriott) and individuals visiting for the Super Bowl from numerous locations.[7] Thus, this factor weighs in favor of transfer as to hourly employees of the Hotel (whom neither the Hotel nor Marriott control and are third parties) and Arizona residents who may have been staying at the Hotel. This factor is neutral as to out-of-state guests who are likely to be beyond the subpoena power of either court. *Seeligson v. Devon Energy Prod. Co., L.P.*, No. 2:14-CV-996-JRG-RSP, 2015 WL 4944481, at *4 (E.D. Tex. Aug. 19, 2015) (considering availability of compulsory process for "non-party employees of [defendant]" under venue-transfer analysis); *Koss Corp. v. Plantronics, Inc.*, No. 6:20-CV-00663-ADA, 2021 WL 2075685, at *4 (W.D. Tex. May 20, 2021) ("[B]ecause the Parties cannot compel third-party witnesses to testify in the way they can compel their employee witnesses, the convenience of third-party witnesses is given considerable weight."); *Opulent Treasures, Inc. v. Ya Ya Creations, Inc.*, No. 2:21-CV-00313-JRG, 2022 WL 965394, at *3 (E.D. Tex. Mar. 30, 2022)

---

[7] The Investigation Reports Plaintiff submitted in support of his Motion for Expedited Discovery confirm this. The three witnesses interviewed by the private investigator were visiting Phoenix from Philadelphia, Pennsylvania. ECF 5-5 at 1.

("The fact that the transferee venue is a venue with useable subpoena power weighs in favor of transfer, and not only slightly." (cleaned up)).

       c.   *The "cost of attendance for willing witnesses" factor favors transfer.*

As for willing witnesses, the Fifth Circuit applies the "100-mile" rule. *Soverain Software LLC v. Oracle Corp.*, 6:12-CV-141, 2014 WL 12621273, at *3 (E.D. Tex. Mar. 27, 2014). When the distance between the existing and proposed venue is more than 100 miles, as it is here, courts determine the distances between the residences of all witnesses and the transferor and transferee venues. *Id.* Transfer is favored if the transferee venue is a shorter average distance from witnesses than the transferor venue. *Id.* Here, majority of the willing witnesses (*e.g.*, Hotel management and employees over whom the Hotel and/or Marriott can exert control) reside in or around Phoenix, Arizona. Specifically—and, again, as Plaintiff concedes in his Motion for Expedited Discovery—other than Plaintiff himself (who has admitted to the media outlets that he cannot remember what happened at the Hotel because he had been drinking)[8], the most important witnesses in this case will be the Hotel's employees who were involved in or witnessed Plaintiff's alleged interaction with another Hotel employee and Plaintiff's alleged removal from the Hotel, as well as the Hotel manager who allegedly contacted the NFL. ECF 3 ¶¶ 4.01–4.08; ECF 5 at 3–8. Accordingly, the District of Arizona is unquestionably a shorter average distance from voluntary witnesses. Thus, this factor heavily favors transfer.

---

[8] *See, e.g.*, Josh Clark, *Michael Irvin address incident that got him removed from NFL Network's Super Bowl coverage*, Audacy, (Feb. 8, 2023, 2:57 PM), https://www.audacy.com/national/sports/michael-irvin-speaks-on-incident-involving-woman-at-hotel ("I don't even remember it really because I had a few drinks to tell you the truth."); Steve DelVecchio, *Michael Irvin makes troubling admission about alleged incident*, Larry Brown Sports (February 8, 2023), https://larrybrownsports.com/football/michael-irvin-troubling-admission-hotel-super-bowl-drunk/611232 (same).

>    *d. The factor considering whether there are "practical problems that make trial of a case easy, expeditious and inexpensive" is neutral.*

As for the final factor ("other practical problems that make trial of a case easy, expeditious and inexpensive"), courts consider problems rationally based on judicial economy, such as the existence of duplicative suits or similar issues that may create practical difficulties for the parties. *Volkswagen II*, 556 F.3d at 1351. There are no currently pending related suits or previously filed related litigation, discovery has not opened in this case, and this case is otherwise in its infancy. Thus, the Court does not have any familiarity with the issues involved in this case. This factor is therefore neutral because no judicial economy would be gained or lost, and no problems would be created or avoided, by granting or denying transfer of this case. *See In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013) ("[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer. Were it, delay would militate against transfer in every case."); *see also Cooktek Induction Sys., LLC v. I/O Controls Corp.*, No. 4:15-CV-548-ALM, 2016 WL 4095547, at *6 (E.D. Tex. Aug. 2, 2016) (Mazzant, J.) (finding this factor neutral even after discovery had begun).

>    4.    <u>The Public Interest Factors Favor Transfer to the District of Arizona.</u>

>    *a. The "local interest in having localized interests decided at home" factor favors transfer.*

Courts consider the "factual connection" of a case with the transferor and transferee venues. *Volkswagen I*, 371 F.3d at 206 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)) ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation"). This factor heavily favors transfer. As shown above, none of the events giving rise to this lawsuit occurred here, and most of the Hotel employees to whom Plaintiff alludes in the Petition necessarily reside in or near Phoenix, Arizona. The burden

of jury duty should not be placed on the residents of this judicial district simply because Plaintiff resides here.

   b. *The "familiarity of the forum with the law that will govern the case" factor favors transfer.*

Under this factor, courts consider each district's familiarity with the case and the laws at issue. *Dusen v. Barrack*, 376 U.S. 612, 643 (1964) (a court's familiarity with the governing laws should be considered in deciding a motion to transfer); *Monster Cable Products, Inc. v. Trippe Mfg. Co.*, No. 9:07-CV-286, 2008 WL 2492060, at *4 (E.D. Tex. June 18, 2008) (this factor favored transfer to the Middle District of Louisiana when Louisiana law applied).   "A federal court is required to follow the choice of law rules of the state in which it sits."   *Oceans Healthcare, L.L.C. v. Illinois Union Ins. Co.*, 379 F. Supp. 3d 554, 559 (E.D. Tex. 2019) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).   Both Texas and Arizona have adopted the "most significant relationship" test outlined in the Restatement (Second) of Conflicts.   *Labertew v. Chartis Prop. Cas. Co.*, 363 F. Supp. 3d 1031, 1036 (D. Ariz. 2019) ("Arizona follows the Restatement's 'most significant relationship' test."); *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311 (5th Cir. 2000) ("Texas courts use the ALI Restatement's 'most significant relationship test' for all choice of law cases" unless the parties have contractually agreed otherwise.).

Applying that test here, Arizona law applies to Plaintiff's claims.   In general, the Restatement provides that "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties . . . ." Restatement (Second) of Conflicts § 145(1).   Factors courts consider in determining the state with the most significant relationship include "the place where the injury occurred" and "the place where the conduct causing the

injury occurred." *Id.* § 145(2).   Again, all the events giving rise to Plaintiff's claims and Plaintiff's purported harm (not being permitted to cover the Super Bowl) occurred exclusively in Phoenix, Arizona.

Further, with respect to Plaintiff's defamation claim specifically, "the local law of the state where the publication occurs determines the rights and liabilities of the parties." Restatement (Second) of Conflicts § 149.   Here the alleged "publication" giving rise to Plaintiff's defamation claim is the Hotel manager's alleged "report" about Plaintiff's harassment of a Hotel employee to the NFL.  *See* ECF 3 ¶¶ 4.01–4.08.  Plaintiff concedes that this alleged publication took place in Arizona such that there is no question that Arizona law will apply.  The same is true of Plaintiff's tortious interference claim, which rests on the same operative facts. Accordingly, because the District of Arizona will indisputably have more familiarity with Arizona law, and because Arizona law is likely to apply in this case, this factor weighs heavily in favor of transfer.

> c. *The "avoidance of unnecessary problems of conflict of laws or in the application of foreign law" factor is neutral.*

This factor is neutral because the same law will apply under either district's choice of law analysis.  As noted above, Arizona and Texas both apply the Restatement's "most significant relationship test."  To the extent the parties dispute the applicable law, that dispute will not be any easier or more difficult to resolve in this Court than in the District of Arizona.

> d. *The "administrative difficulties flowing from court congestion" factor is neutral.*

With respect to court congestion, courts consider, "the speed with which a case can be resolved and come to trial."  *Soverain Software LLC*, 2014 WL 12621273, at *5.  This factor is neutral.  As of September 30, 2022, an average case reached trial 21.0 months after filing in the Eastern District of Texas, while an average case reached trial 37.4 months after filing in the

District of Arizona.[9]  Although the time to trial in this Court may be slightly less, such statistics are "given little weight" because of their "speculative nature."  *Soverain Software LLC*, 2014 WL 12621273, at \*8 (this factor was neutral even though the average time to trial was shorter in the forum state); *see also Coleman v. Brozen*, 4:19-CV-705, 2020 WL 2200220, at \*7 (E.D. Tex. May 6, 2020) (Mazzant, J.) ("Different interpretations of the statistics can produce different conclusions about the relative workloads of each judicial district.").  As such, this factor is neutral.

## IV.   <u>CONCLUSION</u>

Accordingly, for the reasons shown above, Marriott respectfully requests that this Court dismiss this case under Federal Rule of Civil Procedure 12(b)(2).  Alternatively, if the Court declines to dismiss this action outright, Marriott requests the Court to transfer the case to the U.S. District Court for the District of Arizona pursuant to 28 U.S.C. § 1404(a).

Dated:  February 27, 2023.

Respectfully submitted:


*/s/ Nathan D. Chapman*
Nathan D. Chapman (*pro hac vice*)
nchapman@kcozlaw.com
C. Celeste Creswell (*pro hac vice*)
ccreswell@kcozlaw.com
KABAT CHAPMAN & OZMER LLP
171 17th Street NW, Suite 1550
Atlanta, GA 03063
Telephone: (404) 400-7300
Facsimile: (404) 400-7333

Kendall Kelly Hayden
khayden@cozen.com

---

[9] *See United States District Courts — National Judicial Caseload Profile*, FEDERAL COURT MANAGEMENT STATISTICS, September 2022 https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2022.pdf (last visited February 23, 2023)

State Bar No. 24046197
Tyler M. Frankel
tfrankel@cozen.com
State Bar No. 24101767
COZEN O'CONNOR
1717 Main Street, Suite 3400
Dallas, Texas  75201
Telephone: (214) 462-3000
Facsimile:  (214) 462-3299

**ATTORNEYS FOR MARRIOTT
INTERNATIONAL, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of February, 2023, a true and correct copy of the

above and foregoing was served via CM/ECF system to the following counsel of record:

Levi G. McCathern, II
lmccathern@mccathernlaw.com
Scott J. Becker
sbecker@mccathernlaw.com
Jesse L. Cromwell
jcromwell@mccathernlaw.com
Noah Levi McCathern
nmccathern@mccathernlaw.com
MCCATHERN, PLLC
3710 Rawlins, Suite 1600
Dallas, Texas 75219
Telephone: (214) 741-2662
Facsimile: (214) 741-4717


<u>/s/ Nathan D. Chapman</u>
Nathan D. Chapman